UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

AUG - 5 2015

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA,  )
  )
 Plaintiff,  )
  )
v.  ) No.
  )
THEODORE E. DEININGER and  )
FIRST CHOICE ORTHOTICS AND  ) 4:15CR368 CDP/TCM
PROSTHETICS, LLC,  )
  )
 Defendants.  )

### INDICTMENT

### COUNTS 1 - 4
### HEALTH CARE FRAUD SCHEME
### 18 U.S.C. §§ 1347(a)(1) and 2

The Grand Jury charges that:

### INTRODUCTION

1. At all times relevant to this indictment, defendant Theodore E. Deininger was a certified prosthetist and was also certified in orthotics and rehabilitation technology. A prosthetist measures, designs, fabricates, fits, or services a prosthesis that has been prescribed by a licensed physician or other qualified prescriber. A prosthesis is an artificial device that replaces a missing body part that has been lost as a result of trauma, disease, or a congenital condition.

2. Defendant First Choice Orthotics and Prosthetics, LLC (hereafter FCOP) was organized in Missouri in 2007 and since then has principally provided durable medical equipment (DME), including prosthetic devices, to patients. At various times relevant to this indictment, FCOP had offices in Kirksville, St. Joseph, Hannibal, and Chillicothe, Missouri.

3. At all times relevant to this indictment, defendant Deininger was the owner and the only prosthetist associated with FCOP.

4. At all times relevant to this indictment, defendants Deininger and FCOP were DME providers and suppliers in the Medicaid and Medicare Programs.

## RELEVANT MEDICARE PROVISIONS

5. The Medicare Program is a federal health benefits program for the elderly, disabled, and ESRD (end stage renal disease) patients. In general, Part A of the Medicare Program authorizes payment of federal funds for inpatient care in hospitals and skilled nursing facilities, while Medicare Part B authorizes payment for outpatient health services, including durable medical equipment.

6. The United States Department of Health and Human Services (HHS), through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program. CMS acts through fiscal agents, which are private companies that review claims and make payments to providers for services rendered to Medicare beneficiaries.

7. Wisconsin Physician Services is the Medicare contractor responsible for receiving, reviewing and paying claims for physician services in Missouri. Noridian Healthcare Solutions is the Medicare DME contractor responsible for receiving, reviewing and paying DME claims for service providers in Missouri.

**Provider/Supplier Application and Reimbursement**

8. To receive Medicare reimbursement, DME suppliers must submit a written application and execute a written provider agreement. The provider agreement obligates the provider to know, understand, and follow all Medicare regulations and rules.

9. In July 2008, defendant Deininger, as the owner of FCOP, submitted an application and FCOP later became a Medicare DME supplier. The Medicare application, specifically

2

Section 14, entitled "Penalties for Falsifying Information," informed defendant Deininger that federal criminal law prohibits (a) the making or use of false or fraudulent statements, representations, or documents, (b) the concealment or cover-up by trick, device, or deceit of a material fact, and (c) the execution of a fraud scheme, if these actions are related to the delivery or payments for health care benefits, items or services.

10. On or about July 22, 2008, defendant Deininger signed Section 15, entitled "Certification Statement" of the Medicare application, which provides:

> I agree to abide by the Medicare laws, regulations, and program instructions that apply to this supplier. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kick statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

**Retention of Records**

11. Medicare providers and suppliers must retain clinical records for the period of time required by state law or five years from the date of discharge if there is no requirement in state law. Missouri statutes require health care providers to maintain patient records for a minimum of seven years from the date the last professional services were rendered.

## RELEVANT MISSOURI MEDICAID PROVISIONS

12. In the State of Missouri, the Medicaid program is known as "MO HealthNet," but will be referred to herein as Medicaid. The Missouri Department of Social Services, MO HealthNet Division, administers the Missouri Medicaid Program, which is jointly funded by the State of Missouri and the federal government. Medicaid reimburses health care providers, like defendants, for covered services rendered to qualified Medicaid recipients.

13. A Medicaid provider must enter into a written agreement with the Missouri Department of Social Services to receive reimbursement for medical services and durable

medical equipment provided to Medicaid recipients and must agree to abide by DMS regulations in rendering and billing for those services.

14. In December 2008, defendant Deininger, as the owner of FCOP, submitted a supplier application and FCOP later became a Medicaid DME supplier.

15. Medicaid reimbursement claims submitted by DME providers, like defendants, must contain, among other things, the following information: the recipient's name and identification number, the date of service, the provider's identification number, the appropriate procedure code reflecting the service or item provided and any appropriate modifier, and the charge amount.

16. Medicaid providers and suppliers must retain, for five years from the date of service, fiscal and medical records that reflect and fully document services billed to Medicaid, and must furnish or make the records available for inspection or audit by the Missouri Department of Social Services or its representative upon request. Failure to furnish, reveal, or retain adequate documentation for services billed to Medicaid may result in the recovery of the payments for those services not adequately documented and may result in sanctions to the provider's participation in the Medicaid Program. This policy continues to apply in the event of the provider's discontinuance as an actively participating Medicaid provider through a change of ownership or any other circumstance.

## **REIMBURSEMENT FOR PROSTHETIC LEGS**

17. Medicare will reimburse for prosthetic legs and other DME devices that are medically necessary, prescribed by a doctor enrolled in Medicare, and provided by a supplier who is enrolled in Medicare.

18. Medicaid will also reimburse for prosthetic legs. The MO HealthNet Durable Medical Equipment Provider Manual (hereafter Medicaid Manual) provides that Medicaid will

4

generally reimburse for a prosthesis if the prosthesis is reasonable and necessary for use in the patient's residence to treat an illness or injury. Section 13.9.A of the Medicaid Manual provides that: "Used equipment is covered only if the item has been solely used by the participant; i.e. the participant previously rented the equipment."

19. If the patient is a qualified Medicare and Medicaid beneficiary (commonly referred to as "dual eligible"), Medicare and Medicaid share the cost of the patient's prosthetic device. Claims involving dual eligible patients are commonly referred to as "cross-over" claims.

## THE FRAUD SCHEME

20. At all times relevant to this indictment, the defendants received written prescriptions from physicians, whose patients needed custom-fitted prosthetic legs. After receiving the prescription, defendant Deininger met with the patient to, ostensibly, assess the patient and to take the necessary measurements for the prosthesis. After ordering and receiving the prosthetic devices, defendant Deininger assembled the prosthetic leg. Lastly, defendant Deininger met with the patient for the purpose of ensuring a proper fit.

21. The defendants purchased prosthetic legs and related items from several manufacturers, including Otto Bock HealthCare, LP (Otto Bock), located in Minnesota. Otto Bock sold a prosthetic leg, called a C-Leg, which is an above-the-knee prosthesis with a microprocessor knee. The Otto-Bock prosthetic legs differ in color, depending on the date of manufacture. Otto Bock requires prosthetists, such as defendant Deininger, to receive on-line training before they may purchase and provide a C-Leg. Defendant Deininger completed Otto Bock's on-line training on December 15, 2009.

22. A prosthetic leg has a unique serial number imprinted on the leg. The serial number can be used to identify the patient to whom the new leg was originally sold and the date of manufacture.

23. Beginning in or about 2007 and continuing to in or about 2014, the defendants executed and attempted to execute the fraud scheme described below.

24. The defendants purchased used prosthetic legs from online sellers or received them from patients or their families when the patients no longer wanted or needed the prosthetic legs. It was part of the scheme and artifice to defraud that defendant Deininger modified and attempted to fit these used prosthetic legs for patients, while concealing from the patients, Medicare, and Medicaid that the patients had received used prosthetic legs.

25. It was part of the scheme and artifice to defraud that defendant Deininger would repeatedly "fix" the used prosthetic leg of a particular patient when the patient complained about problems with the leg. Defendant Deininger continued to conceal from this patient that the prosthetic leg was a used prosthetic leg.

26. It was part of the scheme and artifice to defraud that, on at least one occasion, the defendants purchased a new C-Leg from Otto Bock and then returned the leg for a credit. The defendants then used the original purchase documents for the returned leg to falsely represent that he had provided a new leg to the patient.

27. It was part of the scheme and artifice to defraud that the defendants submitted reimbursement claims to Medicare and Medicaid that falsely represented that they had provided the patients with a new prosthetic leg, when they knew they had provided a used leg. On Medicaid claims, the defendants used the billing modifier "NU" to falsely indicate the leg provided to the patient was a new leg.

28. It was part of the scheme or artifice to defraud that the defendants billed Medicaid and Medicare for prosthetic legs and devices which, because they were used, did not carry the manufacturer's warranty that is mandated by Medicaid and Medicare. The absence of a warranty further diminished the value of the prosthetic legs that the defendants provided.

29. Examples of these false claims are described below.

**Patient L.S.**

30. It was part of the scheme and artifice to defraud that on or about June 27, 2012, the defendants submitted reimbursement claims, which falsely indicated that they had provided a new prosthetic leg to Patient L.S. on June 27, 2012.

31. It was part of the scheme and artifice to defraud that the defendants actually gave L.S. a used Otto Bock C-leg knee joint, serial number 200825063. In 2008, a provider in Oklahoma had purchased the C-leg knee joint from Otto Bock. The C-leg knee joint, provided to L.S. in 2012, was originally registered to another patient in Oklahoma.

**Patient W.C.**

32. On or about February 3, 2012, February 24, 2012, March 1, 2012, June 4, 2012, and July 2, 2012, the defendants submitted reimbursement claims, which falsely indicated that they had provided two new prosthetic legs, which included two new Otto Bock C-Leg knee joints, to Patient W.C., one on February 2, 2012 and the other on May 31, 2012. The defendants actually provided two prosthetic legs with manual locking knee joints, instead of the C-Legs with microprocessor knee joints.

**Patient D.S.**

33. On or about July 29, 2010, and October 1, 2010, the defendants submitted reimbursement claims, which falsely indicated that they had provided a new prosthetic leg which included an Otto Bock C-Leg knee joint to Patient D.S. on July 27, 2010. The defendants actually provided a used prosthetic leg containing an Otto Bock Compact knee joint manufactured in 2005.

### Executions of the Fraud Scheme

34. On or about the dates listed below, in the Eastern District of Missouri,

**THEODORE E. DEININGER**
**and**
**FIRST CHOICE ORTHOTICS AND PROSTHETICS, LLC,**

the defendants herein, knowingly and willfully executed and attempted to execute, the above described scheme and artifice to defraud a health care benefit program, in connection with the delivery and payment for health benefits, items, and services, that is, the defendants submitted and caused the submission of reimbursement claims to Medicare and Medicaid for prostheses for the patients listed below, when they knew the prostheses, as described in the claims, had not been provided.

| Count | Patient | Date of Service | Date of Claim Medicare | Paid by Medicare | Date of Claim Medicaid | Paid by Medicaid |
|---|---|---|---|---|---|---|
| 1. | L.S. | 6/27/12 | NA | NA | 6/27/12 | $23,824.17 |
| 2. | W.C. | 2/2/12 | 2/3/12 | $35,375.44 | 2/24/12 & 3/1/12 | $8,843.88 |
| 3. | W.C. | 5/31/12 | 6/4/12 | $35,375.44 | 7/2/12 | $8,466.88 |
| 4. | D.S. | 7/27/10 | 7/29/10 | $34,580.89 | 10/1/10 | $8,645.23 |

All in violation of Title 18, United States Code, Sections 1347(a)(1) and 2.

### COUNT 5
### FALSE STATEMENTS TO FEDERAL AGENT
### 18 U.S.C. § 1001(a)(2)

The Grand Jury further charges that:

35. Paragraphs 1 to 33 are incorporated by reference as if fully set out herein.

36. The Federal Bureau of Investigation (FBI) is a federal law enforcement agency, which is responsible for, among other things, investigating violations of federal laws, including federal health care fraud offenses. On or about April 6, 2015, an FBI agent served a subpoena on

8

the defendants as part of a criminal investigation of allegations that the defendants had submitted false claims to Medicare and Medicaid for used prosthetic legs. Defendant Deininger was present at the site where the subpoena was served and was questioned about the used prosthetics.

37.   On or about April 6, 2015, within the Eastern District of Missouri,

**THEODORE E. DEININGER,**

the defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation concerning a matter within the jurisdiction of the executive branch of the United States, that is, he falsely stated to an FBI agent that he had never provided used prosthetic limbs to any patient, when defendant Deininger knew at the time he made the statement that the statement was false.

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney